IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE R. WILLIAMS o/b/o E.W., | ) ) | CASE NO. 5:15-cv-00844 |
| | ) | |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) ) | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Michelle R. Williams ("Plaintiff"), mother of E.W., a minor, ("Claimant"), seeks judicial review of the final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (The "Act").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For the reasons stated below, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

## I.  Procedural History

On May 16, 2012, Claimant's mother filed an application for SSI on behalf of Claimant alleging disability based on behavioral problems, getting kicked out of school often, depression, being behind in all subjects in school, inability to sit still, and difficulty focusing and listening. Tr. 18, 56, 65, 80, 90, 101-106, 110.  Claimant alleged a disability onset date of May 16, 2012. Tr. 18,101-102, 110.  The claim was denied initially on July 5, 2012 (Tr. 80-86), and upon reconsideration on August 27, 2012 (Tr. 90-96).   After Plaintiff requested a hearing (Tr. 97-99),

a hearing was held before Administrative Law Judge Jeffrey Raeber (the "ALJ") on January 22, 2014 (Tr. 37-55).  In his February 4, 2014, decision, the ALJ determined that Claimant was not disabled within the meaning of the Social Security Act since May 16, 2012, the date the application was filed.  Tr. 15-36.  Following Plaintiff's request for review of the ALJ's decision by the Appeals Council (Tr. 14), on March 31, 2015, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6).  On April 30, 2015, Plaintiff filed the instant action on behalf of Claimant seeking review of the Commissioner's decision. Doc. 1.

## II. Evidence

Claimant was born in August 2011.  Tr. 101.  He was in fifth grade at the time the application was filed (Tr.112) and in seventh grade at the time of the hearing (Tr. 41).

### A.     School records

Beginning in 2007 and continuing through at least 2012, Claimant has been disciplined at school on multiple occasions and has received detentions and suspensions for various matters, including insubordination/failing to comply and for intentionally/recklessly causing harm/risk. Tr. 166-167, 168-169, 170-171, 248-250.

### B.     Teacher and parent questionnaires/assessments

#### 1.     Julie Rankin, fifth grade teacher

February 27, 2012, Vanderbilt Assessment

On February 27, 2012, Julie Rankin, Claimant's fifth grade teacher, completed a Vanderbilt Assessment, which rated Claimant's behavior in 35 categories.  Tr. 201-202.  Ms. Rankin noted that she had had 6 months to evaluate Claimant's behaviors at the time she completed the Assessment and noted that her evaluation was based on a time when Claimant was

not on medication.[1]  Tr. 201.  The rating categories were: "never," "occasionally," "often," and "very often."  Tr. 201.

Ms. Rankin rated Claimant's behavior as occurring "occasionally" in the following 6 categories: (1) fails to give attention to details or makes careless mistakes in schoolwork; (2) has difficulty sustaining attention to tasks or activities; (3) does not seem to listen when spoken to directly; (4) loses things necessary for tasks or activities (school assignments, pencils, or books); (5) lies to obtain goods for favors or to avoid obligations (eg, "cons" others); and (6) blames self for problems; feels guilty.  Tr. 201-202.

Ms. Rankin rated Claimant's behavior as occurring "often" in 9 categories.  Tr. 201. Those 9 categories were: (1) has difficulty organized tasks and activities; (2) is easily distracted by extraneous stimuli; (3) leaves seat in classroom or in other situations in which remaining in seat is expected; (4) talks excessively; (5) blurts out answers before questions have been completed; (6) loses temper; (7) is angry or resentful; (8) is spiteful or vindictive; and (9) feels worthless or inferior.  Tr. 201-202.

Ms. Rankin rated Claimant's behavior as occurring "very often" in the following 3 categories: (1) does not follow through on instructions and fails to finish schoolwork (not due to oppositional behavior or failure to understand); (2) avoids, dislikes or is reluctant to engage in tasks that require sustained mental effort; and (3) actively defies or refuses to comply with adult's requests or rules.  Tr. 201.

Ms. Rankin rated Claimant's behavior as occurring "never" in the remaining 17 categories.  Tr. 201.

Regarding Claimant's academic performance, Ms. Rankin rated Claimant's reading as

---

[1] Claimant's principal and a counselor at Pastoral Counseling also completed a Vanderbilt Assessments on February 27, 2012.  Tr. 203-204, 205-206.

"somewhat of a problem."  Tr. 202.  She rated Claimant's mathematics as "problematic."  Tr. 202.  She rated Claimant's written expression as "average."  Tr. 202.

Ms. Rankin also rated Claimant's classroom behavioral performance, rating his disrupting class as "problematic" and rating his relationship with peers, assignment completion, and organizational skills as "somewhat of a problem."  Tr. 202.  She rated his following directions as "average."  Tr. 202.

In the comments section, Ms. Rankin stated:

> Can go for days without any problem but then starts to lose it in terms of behavior.  Behavior issues – talking out, talking back, insubordination, anything to get attention from adults & peers; seems to have a switch because when he chooses to be good, he can be.

Tr. 202.

May 30, 2012, Teacher Questionnaire

On May 30, 2012, Ms. Rankin completed a Social Security Administration Teacher Questionnaire.  Tr. 119-128.  At the time she completed the Teacher Questionnaire, Claimant was in fifth grade and Ms. Rankin had known Claimant for one school year and had seen him 5 days/week for 6 hours/day for all subjects.  Tr. 119.  Ms. Rankin indicated that Claimant was reading at a fifth grade level and his math and written language were below fifth grade level.  Tr. 119.  The student to teacher ratio was 27:1.  Tr. 119, 127.  Claimant was in regular education classes.  Tr. 127.

In completing the Teacher Questionnaire, Ms. Rankin was asked to rate Claimant in six domains.  Tr. 120-125.  Ms. Rankin observed no problems in three domains – acquiring and using information; moving about and manipulating; and in health and well-being.  Tr. 120, 123, 125.

Ms. Rankin noted problems in the attending and completing tasks domain, finding a

4

serious problem in 1 of the 13 categories rated - working without distracting self or others.  Tr. 121.  In 3 categories, Ms. Rankin rated Claimant has having an obvious problem – changing from one activity to another without being disruptive, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time.  Tr. 121.  Ms. Rankin found only slight or no problems in the remaining 9 categories.  Tr. 121.  She explained that:

> [Claimant] can work very independently when he wants to.  He shows great control when he chooses to.  When he doesn't want to, he will disrupt others, get out of seat, talk out & show very rude behavior.  Seems to be a choice for him.

Tr. 121.

Ms. Rankin noted problems in the interacting and relating with others domain finding a very serious problem in 2 of 13 categories – following rules (classroom, games, sports) and respecting/obeying adults in authority.  Tr. 122.   Ms. Rankin rated Claimant as having a serious problem in 2 categories – seeking attention appropriately and expressing anger appropriately.  Tr. 122.   In the remaining 9 categories, Ms. Rankin found only slight or no problems.  Tr. 122.  She explained:

> We have tried a behavior plan using points to use for rewards, but they only work short term.
>
> [Claimant] can look/act like a star student when he feels motivated to do so.  He has unfortunately chosen many days this school year (and looking at his previous school record, other years too) to be extremely disruptive, disrespectful & insubordinate.  When he is in a mood, like stated above, he usually ends up in the office.

Tr. 122.

Ms. Rankin noted problems in the domain of caring for himself.  Tr. 124.  She found that Claimant had serious problems in 3 out of 10 categories – handling frustration appropriately, cooperating in, or being responsible for, taking needed medications, and responding appropriately to changes in own mood (e.g., calming self).  Tr. 124.  Ms. Rankin rated Claimant as having an

obvious problem in 2 categories – being patient when necessary and using appropriate coping skills to meet daily demands of school environment.  Tr. 124.  In the remaining 5 categories, Ms. Rankin found only slight or no problems.  Tr. 124.  Ms. Rankin explained:

> When confronted about behavior he very often will 'go off' & has great difficulty calming himself back down.  He has been on medication for a couple months for ADHD.  Since he has been back from his latest suspension he has forgotten to take it approx. 2 times a week.

Tr. 124.

### 2.    Michelle Williams

January 25, 2012, Vanderbilt Assessment

On January 25, 2012, Plaintiff completed a Vanderbilt Assessment rating Claimant's symptoms in 47 categories and his performance in 8 categories.  Tr. 207-208.  Her assessment included rating her son's performance as problematic in overall school performance, mathematics, and participation in organized activities.  Tr. 207.  She rated her son's performance in writing, relationship with siblings, and relationship with peers as average.  Tr. 207.  She rated Claimant's performance in reading as above average and his relationship with parents as excellent.  Tr. 207.

May 31, 2012, Questionnaire

On May 31, 2012, Plaintiff completed a Social Security Administration Questionnaire regarding Claimant.  Tr. 135-138.  Plaintiff explained that Claimant cannot sit still and has a lot of issues at school because he fights with teachers and classmates and does not follow the rules.  Tr. 135-138.  She indicated that Claimant needs a lot of supervision and has problems maintaining attention and concentration and following instructions and completing tasks.  Tr. 135, 136.  Plaintiff explained that sometimes Claimant gets along with his friends but other times he doesn't.  Tr. 135, 136, 139.  She reported that Claimant was receiving counseling services for his behavior.  Tr. 135.  Plaintiff indicated that Claimant had an IEP.  Tr. 135, 138.

6

March 22, 2013, Vanderbilt Assessment

On March 22, 2013, Plaintiff completed a Vanderbilt Assessment Follow-up.  Tr. 164-165.  In the follow-up assessment, there were 18 symptoms categories to be rated.  Tr. 164.  The same performance categories were included for assessment as were included in the January 2012 assessment.  Tr. 164.  Her assessment included rating her son's performance as problematic in overall school performance, mathematics, and relationship with peers.  Tr. 164.  She rated Claimant's performance in writing as somewhat problematic and his reading performance as average.  Tr. 164.  She did not rate relationship with parents, relationship with peers or participation in organized activities.  Tr. 164.  She noted "NA" with respect to those categories.  Tr. 164.  In the follow-up assessment, Ms. Williams reported that Claimant had been experiencing stomachaches, had been socially withdrawn – decreased interaction with others, and had exhibited dull, tired or listless behavior.  Tr. 165.

**C.     Medical evidence**

**1.      Locust Pediatric treatment records**

During a well-visit on January 25, 2012, with Dr. Joel Davidson, M.D., (Tr. 179-182, 196-200), Claimant's mother raised concerns regarding Claimant's behavior at school and at home, noting multiple suspensions, and noting that Claimant's symptoms were similar to his older brother who had ADHD (Tr. 179).  During the January 25, 2012, well-visit, Claimant's mother noted that they had recently started counseling at Pastoral Counseling.  Tr. 179.  Claimant's mother was asked to complete a Vanderbilt Assessment ("parent Vanderbilt") and provided Claimant with Vanderbilt Assessment ("school Vanderbilts") to be completed by his teachers.  Tr. 181-182.  Dr. Davidson's overall assessment was that Claimant's symptoms were consistent with ADHD inattention and hyperactivity in addition to ODD (Oppositional Defiant Disorder) and conduct disorder.  Tr. 182.

7

On April 19, 2012, Claimant was seen by Dr. David L. Baum, M.D., regarding his attention and behavior problems that had been reported earlier to Dr. Davidson.  Tr. 178, 194-195. Dr. Baum noted that the parent's Vanderbilt Assessment that had been obtained by Dr. Davidson showed both inattention and hyperactivity.  Tr. 178.  The school Vanderbilts had been completed and returned to Dr. Baum at the April 19 visit.  Tr. 178.   Claimant's mother reported that Claimant had a very difficult time paying attention; could not complete tasks; required constant monitoring; became frustrated easily and argued with his teacher which resulted in discipline and being removed from class; and had a very difficult time completing his homework.  Tr. 178. Claimant's mother reported that Claimant's problems had been present for 2 years.  Tr. 178. Claimant's mother also reported that both she and Claimant had been very emotional and Claimant had some days when things went pretty well and other days when Claimant became angry and frustrated.  Tr. 178.   Dr. Baum noted that the school Vanderbilts reflected that one of Claimant's teachers reported the same with respect to Claimant's emotional state.  Tr. 178. Claimant was reported to be sad often and that he cried often and had a hard time sleeping.  Tr. 178.  Claimant denied suicidal, homicidal or nihilistic thinking.  Tr. 178.  Dr. Baum diagnosed ADHD with behavior/mood problems and prescribed Concerta (27 mg).  Tr. 178.

On May 30, 2012, one of Claimant's pediatric physicians completed a form for Social Security.[2]  Tr. 191-193.  Records relied upon to complete the form included office notes from both Dr. Davidson and Dr. Baum and various Vanderbilt Assessments.  Tr. 191-208.  The physician completing the form reported that Claimant had been diagnosed with ADHD with behavior and mood problems and had been started on Concerta on April 19, 2012.  Tr. 192.   It was reported that behavior responses/therapies at school had not helped and Claimant was

---

[2] The signature on the form is not legible. Tr. 191.

attending Pastoral Counseling but it was not helping much.  Tr. 193.  The physician completing the form also noted that, while instructed in January 2012 to return for follow up in 2-3 weeks, Claimant did not return until April 2012.  Tr. 193.

On August 1, 2012, Claimant saw Dr. Baum for follow up regarding his ADHD.  Tr. 236-237.  Claimant was doing well at the time.  Tr. 236.  However, he had run out of medication about a month prior.  Tr. 236.  Per Claimant and his mother, Claimant had been doing better in school when taking his medication.  Tr. 236.  Also, Claimant's mother reported that Claimant was doing better at home while on his medication – he was listening better and able to complete tasks.  Tr. 236.  Claimant denied any side effects from the medication and reported that he was able to focus much better on school work when he was taking his medication.  Tr. 236.  Claimant's grades were reported to have been good at the end of the year and there were no social concerns reported.  Tr. 236.  Parent and school Vanderbilts were provided and Dr. Baum recommended that Claimant follow up in September 2012.  Tr.  237.

On June 25, 2013, Claimant saw Dr. Baum for his 11 year old well-visit; follow up regarding his ADHD; and for a medication refill.  Tr. 258-260.  Claimant was in seventh grade.  Tr. 259.  With respect to Claimant's school performance, it was noted that Claimant was "doing poorly, [had] signs of hyperactivity, signs of inattention and [was] struggling with homework."  Tr. 259.  There was no involvement in organized sports.  Tr. 259.

Claimant saw Dr. Baum on October 14, 2013, for follow up regarding his ADHD.  Tr. 256-257.  Claimant was out of medication.  Tr. 256.  Claimant's mother felt that Claimant might need to increase his medication dose but was not entirely sure.  Tr. 256.  Claimant's mother was not sure when Claimant had run out of his medication but indicated that Claimant did much better

when he took his medication.[3]  Tr. 256.  Dr. Baum assessed "ADHD – uncertain on degree of control."  Tr. 257.   Concerta was restarted (36 mg) and Vanderbilts were sent to school with an ADHD letter.  Tr. 257.   Due to reports of problems with sleep, Dr. Baum recommended that the television be removed from Claimant's bedroom and that Claimant start on a trial of melatonin. Tr. 257.

### 2.      Pastoral Counseling Service records

In December 2009, Claimant underwent a Child/Adolescent Diagnostic Assessment at Pastoral Counseling Service ("Pastoral Counseling").  Tr. 221-234.  The assessment was completed by Dianna Christian, LISW.  Tr. 234.  Claimant was 8 years old at the time and was in third grade.  Tr. 232.  He had been referred to Pastoral Counseling because he was hitting others with his book bag.  Tr. 221, 232.  Claimant denied doing so stating that "'they thought' he was hitting others but he wasn't."  Tr. 232.  Claimant's mother reported that most of Claimant's problems were in the area of paying attention, staying on task, listening, interrupting and waiting his turn.  Tr. 232.  Claimant's mother also reported that Claimant had problems with caring for his personal needs and yelled and screamed at others or became argumentative with both peers and adults.  Tr. 232.  Ms. Christian assessed attention deficit/hyperactivity disorder and assessed a GAF of 55.[4]  Tr. 232.  Ms. Christian recommended that Claimant receive Behavioral Health and CPST (Community Psychiatric Supportive Treatment) Services while at the STRIVE Program

---

[3] The treatment notes from October 14, 2013, also reflect that Claimant's mother had a hard time remembering how Claimant did when he was on his medication.  Tr. 256.

[4] As set forth in the DSM-IV, GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*  The GAF was removed from DSM-5.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fifth Edition.  Arlington, VA, American Psychiatric Association, 2013 ("DSM-5"), at 16.

and continue services upon return to the school setting.  Tr. 232.

After a break in receiving services from Pastoral Counseling, in March 2011, Claimant was referred to Pastoral Counseling again as a result of fighting at school.  Tr. 211-220.  He was seen by Karla Wenrick, LISW.  Tr. 218.  Ms. Wenrick found that Claimant showed symptoms of ADHD, including failing to pay close attention to details; difficulty sustaining attention in tasks; not following through on instructions and failing to finish school work; difficulty organizing tasks and activities; being easily distracted by extraneous stimuli; being forgetful with respect to daily activities; fidgeting with hands and feet; squirming in seat; leaving his seat in classroom; being "on the go" often; having difficulty waiting his turn; interrupting or intruding on others often.  Tr. 219.  Ms. Wenrick found that Claimant did not meet the full criteria for Oppositional Defiant Disorder but showed a number of behavioral symptoms such as deliberately annoying others; blaming others for his mistakes or misbehavior; arguing with adults often; and losing temper often.  Tr. 219.  Claimant acknowledged having done well for a while controlling his emotions and his mother thought that Claimant would do better in a new school.  Tr. 219.  Ms. Wenrick indicated that Claimant would have to be retrained in techniques that had helped Claimant manage his behavior and work to formulate new goals and objectives.  Tr. 219.  On April 12, 2011, Ms. Wenrick diagnosed Claimant with attention deficit hyperactivity disorder, i.e., ADHD, combined type and disruptive behavior, NOS.  Tr. 219.  She assessed a GAF score of 51.  Tr. 220.

In May 2012, Tiffany Martin, PC, a counselor with Pastoral Counseling completed an Individualized Service Plan Review of Claimant's to reflect the transition from school based services to community and home based services over the summer months.  Tr. 247.  Ms. Martin reported that Claimant had been in school based therapy with some variable outcomes during the 2011-2012 school year.  Tr. 247.  Claimant's emotional and behavioral functioning had improved but Ms. Martin indicated that it was medically necessary for Claimant to remain in treatment to

11

continue to work on increasing personal responsibility and improving his behaviors at school.  Tr. 247.  Ms. Martin recommended that Claimant participate in CPST services and counseling over the summer break.  Tr. 247.

Claimant continued to receive counseling services through Pastoral Counseling through the end of 2012.  Tr. 238-244.  On December 4, 2012, Ms. Martin completed a Behavioral Health Client Summary.  Tr. 238.   Claimant's diagnoses were ADHD, combined type, and disruptive behavior disorder, NOS.  Tr. 238.  Claimant's GAF was 62.[5]  Tr. 238.  Treatment recommendations included increasing Claimant's ability to comply with rules and expectations at school and increasing respect and cooperation towards adults.  Tr. 238.  Also, Ms. Martin noted that Claimant was receiving CPST services to help increase his social, coping and anger management skills.  Tr. 238.  Claimant was taking Concerta.  Tr. 238.  However, Claimant reported not taking his medication consistently and his behaviors were not significantly different when taking versus not taking his medication so it was difficult to tell if had taken it.  Tr. 238.  With regard to Claimant's prognosis, Ms. Martin indicated that Claimant had a lot of promise in improving his behaviors and had the knowledge he needed to be able to make significant changes.  Tr. 238.  Ms. Martin noted, however, that Claimant had a lot of difficulty following through and with making good choices for himself and, as a result, got himself in a lot of trouble.  Tr. 238.  Ms. Martin indicated that this appeared to be due to Claimant's lack of desire to change his behaviors rather than difficulty with impulsivity.  Tr. 238.  Also, Ms. Martin indicated that it was difficult to find effective consequences and rewards to encourage appropriate behavior at school.  Tr. 238.

Claimant continued to receive services through Pastoral Counseling in 2013.  Tr. 252-255.

---

[5] A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV-TR, at 34.

On June 4, 2013, Ms. Martin reported that, since starting treatment at Pastoral Counseling, Claimant's behaviors had gotten worse. Tr. 252. Ms. Martin acknowledged that Claimant's primary care physician had diagnosed Claimant with and prescribed him medication for ADHD but Ms. Martin felt that ADHD was a secondary diagnosis and his primary diagnosis was Oppositional Defiant Disorder. Tr. 252-253. She assessed Claimant's GAF as 55. Tr. 253. Ms. Martin based the diagnosis of Oppositional Defiant Disorder on Claimant meeting the following symptoms: often loses his temper, often argues with adults, often actively defies or refuses to comply with adults' requests or rules, often deliberately annoys people, often blames others for his mistakes or misbehavior, is often touchy or easily annoyed by others, is often angry and resentful, and is often spiteful or vindictive. Tr. 252.

On December 11, 2013, another Behavioral Health Client Summary was completed by Pastoral Counseling.[6] Tr. 261. Claimant's counselor indicated that Claimant had been referred for services at Pastoral Counseling because of "self-admitted 'anger issues.'" Tr. 261. Also, Claimant had "difficulty accepting authority and frequently argue[d] w[ith] teachers and staff." Tr. 261. Claimant's diagnoses were Oppositional Defiant Disorder and ADHD and his GAF was 62. Tr. 261. The treatment recommendations were to "Decrease inappropriate behaviors, increase attention and focus in the classroom setting, increase self-esteem." Tr. 261. Claimant was compliant with his medication. Tr. 261. As far as Claimant's prognosis, Claimant's counselor indicated that "Psychological intervention w[ith] parent(s) and child can substantially improve short- and long-term options." Tr. 261.

### 3. State agency reviewing physicians' opinions

As part of the initial consideration of Claimant's application for social security benefits, on June 30, 2012, state agency psychologist Irma Johnston, Psy.D., reviewed the file, including

---

[6] It is not clear which counselor authored the December 11, 2013, Behavioral Health Client Summary. Tr. 261.

records from Pastoral Counseling, Dr. Baum, and Claimant's school, and analyzed whether

Claimant had an impairment or impairments that met, medically equaled or functionally equaled a

Listing.  Tr. 59-64.  Dr. Johnston concluded that Claimant's ADD/ADHD and

Oppositional/Defiant Disorders were severe but did not meet, medically equal or functionally

equal Listing 112.11 (ADHD) or Listing 112.08 (Personality Disorders).  Tr. 60.  In considering

whether Claimant's impairment functionally equaled a Listing, Dr. Johnston rated Claimant in the

six domains.  Tr. 60-61.  Dr. Johnston found that Claimant had no limitations in two domains –

moving about and manipulation of objects and health and physical well-being; less than marked

limitations in three domains – acquiring and using information, attending and completing tasks,

and caring for yourself; and marked limitations in one domain – interacting and relating with

others.  Tr. 60-61.

Upon reconsideration, on August 17, 2012, state agency psychologist Karla Voyten,

Ph.D., completed a review of Claimant's file.[7]  Tr. 69-73.  Dr. Voyten affirmed Dr. Johnston's

conclusions that Claimant's ADD/ADHD and Oppositional/Defiant Disorders were severe but did

not meet, medically equal or functionally equal a Listing.  Tr. 69.  Dr. Voyten's ratings of

Claimant's limitations in the six domains were the same as Dr. Johnston's ratings.  Tr. 70-71.

**D.  Testimonial evidence**

**1.  Claimant's testimony**

Claimant testified at the hearing.  Tr. 41-49.  Claimant testified that he was attending

school at I CAN Preparatory.  Tr. 41.  He stated that he did not always have the best days but

thought school was all right.  Tr. 41.  He was in the seventh grade and his favorite subject was

reading.  Tr. 41.  He indicated that he felt he was a good reader and liked reading a lot of different

---

[7] On reconsideration, Claimant's file was also reviewed by state agency reviewing physician Anahi Ortiz, M.D., (pediatrics) to address physical limitations, if any.  Tr. 70-71.  Claimant, however, has not challenged the ALJ's findings with respect to his alleged physical impairments.  Thus, Dr. Ortiz's review is not pertinent to the Court's review.

types of books and was in the process of reading a book titled "Death on a Deadline."  Tr. 41-42.

Claimant stated that he completes his homework either at school or home and sometimes he needs

help with his homework.  Tr. 42.  The subject he needs the most help with his math.  Tr. 42.

Claimant has friends at school with whom he talks and plays basketball after school.  Tr.

42-43.  Also, he is on a basketball team.  Tr. 45.  When he is not in school, Claimant usually

watches television or goes outside and hangs out with friends.  Tr. 44-45.  He has stayed

overnight at friends' houses in the past and he has had friends stay overnight at his house.  Tr. 47.

Claimant wakes himself up with an alarm and gets himself ready.  Tr. 45.  He takes his

ADHD medication in the morning. Tr. 45-46.  Claimant stated that he usually does not miss

taking his medication.  Tr. 45-46.  If he does not take his medication it is because he has run out

of it.  Tr. 46.  He notices improvement in his attention when taking his medication but indicated

that, even with medication, it is still hard for him to focus at times and he continues to get in

trouble at school.  Tr. 46, 47-48.  Claimant estimated that he is unable to control his temper about

three times per week.  Tr. 48.

Claimant acknowledged getting in trouble at school mostly for talking back and being

disrespectful.  Tr. 43.  He also has gotten in trouble for not paying attention, not being on task,

and not being focused.  Tr. 43.  He explained that he had most recently gotten in trouble about a

month prior to the hearing.  Tr. 43.  He had received a detention.  Tr. 43.  He was talking to a

friend and not paying attention.  Tr. 43.   The teacher's assistant was talking to him and he talked

back to the assistant and continued to tell the assistant to stop talking to him.  Tr. 43-44.  The

teacher's assistant eventually sent him to the office.  Tr. 44.  Claimant acknowledged having been

in fights at school.  Tr. 44.  The fight started with an argument about someone talking about the

Claimant and it escalated into a physical fight.  Tr. 44.  Both claimant and the other student were

suspended.  Tr. 44.

**2.      Plaintiff's testimony**

Plaintiff also testified at the hearing regarding her son.  Tr. 49-54.  Plaintiff indicated that she was surprised that Claimant testified that reading was his favorite subject because he gets frustrated when he tries to read and he was getting a D or F in reading in school.  Tr. 49.  Plaintiff stated that, when Claimant is with a friend, they have their moments.  Tr. 49.  She explained that Claimant will get upset if it is his turn to play a game or if things are not going the way that he wants it to go.  Tr. 50.  Plaintiff has had to intervene in arguments between Claimant and his friends.  Tr. 50.  With respect to Claimant being on a basketball team, Plaintiff indicated that she had only recently signed him up and he was just starting practices.  Tr. 53.  Whether or not he remained on the team would be dependent upon his behavior and grades.  Tr. 53.

Regarding Claimant's behavior at school, Plaintiff indicated that up until more recently she had been getting calls from the school daily about Claimant's anger, not following directions, and cussing out teachers.  Tr. 50.  Between Thanksgiving and Christmas, Claimant had been kicked off the bus for hitting a girl and he got into it with the bus driver.  Tr. 50.  Plaintiff indicated that Claimant also exhibits similar behavioral issues at home.  Tr. 50.  He is unable to stay on task and becomes frustrated after working on something after a period of time.  Tr. 50-51.  He has not yet broken anything but yells and storms through the house.  Tr. 51.

Although questioned about portions of the record reflecting Plaintiff's statements that Claimant had run out of medication, Plaintiff indicated that she makes sure that Claimant does not run out of medication and she could only remember there being one time that he had run out of medication.  Tr. 52, 53.  She does not notice a difference though when he takes his medication.  Tr. 52.  Plaintiff thinks that maybe his dosage should be increased because it does not seem like things are improving.  Tr. 52.

### III. Standard for Disability

The standard for evaluating a child's disability claim differs from that used for an adult. 42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 146, 147-148 (6th Cir. 2002). A child is considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.924(d).[8]

At Step Three, to determine whether a child's impairment *functionally* equals the Listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment

---

[8] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.

results in "marked" limitations[9] in two domains, or an "extreme" limitation[10] in one domain, the impairment *functionally* equals the listings and the child will be found disabled.  20 C.F.R. § 416.926a(d).

## IV. The ALJ's Decision

In his February 4, 2014, decision, the ALJ made the following findings:

1.  Claimant was born in August 2011.  He was a school-age child on May 16, 2012, the application date and as of the date of the decision.  Tr. 21.

2.  Claimant has not engaged in substantial gainful activity since May 16, 2012, the application date.  Tr. 21.

3.  Claimant has the following severe impairments: Attention Deficit Hyperactivity Disorder, disruptive behavior, Oppositional Defiant Disorder.  Tr. 21.  Claimant's back pain is a non-severe impairment.  Tr. 21.

4.  Claimant does not have an impairment or combination of impairments that meets or medically equals a Listing.  Tr. 21-22.

5.  Claimant does not have an impairment or combination of impairments that functionally equals a Listing.  Tr. 22-32.

Based on the foregoing, the ALJ determined that Claimant had not been under a disability since May 16, 2012, the date the application was filed.  Tr.  32.

## V.  Parties' Arguments

First, Plaintiff contends that the ALJ erred in finding that the Claimant did not have an

---

[9] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than extreme."  *Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*

[10] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).  An "extreme" limitation means "more than marked."  *Id.*  "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*

impairment that met or functionally equaled a listed impairment.  Doc. 12, pp. 11-14, Doc. 15, pp. 1-2.  More particularly, the Plaintiff argues that the ALJ erred in finding that Claimant's impairments did not meet or equal Listing 112.11 or Listing 112.08.[11]  Doc. 12, pp. 11-14, Doc. 15, pp. 1-2.   Next, Plaintiff argues that the ALJ erred in not calling a medical expert.  Doc. 12, pp. 14-15, Doc. 15, pp. 2-4.  Finally, Plaintiff argues that the ALJ's reliance upon Claimant's fifth grade teacher's assessment and state agency reviewing psychologists' opinions was misplaced and does not support the ALJ's denial of social security benefits.  Doc. 12, pp. 16-17.

The Commissioner contends that the ALJ reasonably concluded that Claimant's impairments did not meet or functionally equal a listed impairment (Doc. 14, pp. 9-10); did not err by not calling a medical expert to testify at the hearing (Doc. 14, pp. 11-13); and reasonably weighed the opinion evidence, including evidence from the state agency reviewing psychologists and Claimant's fifth grade teacher.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  A court "may not try the case *de novo*, nor resolve conflicts in evidence,

---

[11] In a conclusory manner, Plaintiff also asserts that the ALJ erred in failing to find that Claimant had a marked impairment in in the domain of Caring for Self.  Doc. 12, p. 11.  However, Plaintiff does not develop this argument and "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").

nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ reasonably concluded that Claimant's impairments did not meet or functionally equal a Listing.**

The ALJ discussed and considered whether Claimant's impairments met Listing 112.11 and Listing 112.08, finding that neither Listing was met.  Tr. 21-22.  Additionally, the ALJ considered and discussed whether Claimant's impairments functionally equaled a Listing, finding that Claimant did not have extreme limitations in any domain and had marked limitations in only one domain.  Tr. 22-32.  Thus, the ALJ concluded that Claimant's impairments did not functionally equal a Listing.  Tr. 22-32.  Plaintiff contends that these findings were in error.

Listing 112.11

Listing 112.11, Attention Deficit Hyperactivity Disorder, is "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity."  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.11.  As provided for in Listing 112.11:

> The required level of severity is met when the requirements in both A and B are satisfied.
>
>     A.  Medically documented findings of all three of the following:
>
>           1.      Marked inattention; and
>           2.      Marked impulsiveness; and
>           3.      Marked hyperactivity;
>
>     AND
>
>     B.  For . . . children (age 3 to the attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.11.

The appropriate age-group criteria found in B2 of 112.02 are:

> For children (age 3 to attainment of age 18), an impairment resulting in at least two of the following:
>
>     a.      Marked impairment in age-appropriate cognitive/communicative function .

20

. .; or

b.      Marked impairment in age-appropriate social functioning . . .; or

c.      Marked impairment in age-appropriate personal functioning . . .; or

d.      Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.02(B)(2).

Listing 112.08

Listing 112.08, Personality Disorders, is "[m]anifested by pervasive, inflexible, and

maladaptive personality traits, which are typical of the child's long-term functioning and not

limited to discrete episodes of illness."  20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.08.  As

provided for in Listing 112.08:

> The required level of severity is met when the requirements in both A and B are
> satisfied.
>
> A.      Deeply ingrained, maladaptive patterns of behavior, associated with
>          one of the following:
>
>      1.      Seclusiveness or autistic thinking; or
>      2.      Pathologically inappropriate suspiciousness or hostility; or
>      3.      Oddities of thought, perception, speech, and behavior; or
>      4.      Persistent disturbances of mood or affect; or
>      5.      Pathological dependence, passivity, or aggressiveness; or
>      6.      Intense and unstable interpersonal relationships and impulsive and
>            exploitative behavior; or
>      7.      Pathological perfectionism and inflexibility;
>
> AND
>
> B.      For . . . children (age 3 to the attainment of age 18), resulting in at least
>          two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. pt. 404, Subpt. P, App. 1, Listing 112.08.[12]

To facilitate meaningful judicial review, sufficient articulation at Step Three is necessary.

*Phillips ex rel. K.D.W. v. Astrue*, 2012 WL 2568052, * 4 (N.D. Ohio June 29, 2012).   However,

Plaintiff maintains the burden of proof at Step Three.  *Id.*

---

[12] The appropriate age-group criteria found in B2 of 112.02 are set forth above.

Here, at Step Three, the ALJ considered both Listing 112.11 and Listing 112.08, stating:

> As for listing section 112.11 (Attention Deficit Hyperactivity Disorder) requires evidence of developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity or section 112.08 (personality disorder) which requires that the child exhibit pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness.
>
> The claimant was prescribed medication for his symptoms of Attention Deficit Hyperactivity.  When he was taking the medication, there was improvement in his symptoms (Exhibit 4F).  Regarding his personality disorder, the claimant was attending counseling to learn adaptive skills to control his behavior (Exhibit 5F).  Both his fifth grade teacher and counselor indicated that the claimant could control his behavior, when he wanted to do so (Exhibits 3E, 5F).  The claimant did not have difficulty playing team sports.  He could interact with others and listen to instructions with his coach (Exhibits 2F, 5E).

Tr. 21-22.

Plaintiff contends that reversal or remand is warranted because the ALJ relied on Claimant's fifth grade teacher's opinion that Claimant could control his behavior when he wanted to without referencing later reports that Claimant's Disruptive Behavior Disorder, NOS, diagnosis was changed to Oppositional Defiant Disorder.  Doc. 12, p. 12 (citing Tr. 252-254, 261).  However, as early as January 25, 2012, Claimant's physician indicated that Claimant exhibited symptoms consistent with Oppositional Defiant Disorder and conduct disorder (Tr. 182) and, as reflected in the ALJ's decision, the ALJ concluded that one of Claimant's severe impairments was Oppositional Defiant Disorder (Tr.  21).  Thus, even though the ALJ did not specifically identify the change in diagnosis that is reflected in Pastoral Counseling records cited by Plaintiff when discussing Listing 112.11 and Listing 112.08, it is clear the ALJ did not ignore evidence regarding Claimant's Oppositional Defiant Disorder.   Furthermore, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004).

Plaintiff also argues that the ALJ should have concluded that Claimant's impairments met Listing 112.11 because there is evidence sufficient to demonstrate two of the symptoms of the B2 criteria of section 112.02: namely, marked impairment in social function based on the ALJ's finding that Claimant had marked limitations in the domain of interacting and relating to others; and marked difficulties in maintaining persistence or pace because there is evidence that Claimant frequently loses focus.  Doc. 12, p. 12.  Recognizing that the ALJ concluded that Claimant had less than marked limitations in attending and completing tasks (Tr. 27-28), Plaintiff nonetheless argues that this determination is not dispositive of a determination under the B2 criteria of section 112.02 regarding ability to maintain persistence or pace.   However, as noted by the ALJ, the domain of attending and completing tasks considers a claimant's ability to focus and maintain attention and how well he can begin, carry through, and finish activities, including the mental pace at which he performs the activities and the ease with which a claimant can change activities. Tr. 27; 20 C.F.R. § 416.926a(h).  Further, when assessing Claimant's limitations under the domain of attending and completing tasks, the ALJ considered evidence relating to Claimant's ability to focus and concluded that he had less than marked limitations in the domain of attending and completing tasks.  Tr. 28.   Thus, to the extent that Plaintiff claims that reversal and remand is warranted because the ALJ did not take into consideration evidence regarding Claimant's limitations with respect to this ability to focus, her claim is without merit.  Furthermore, it is not for this Court to reweigh evidence considered by the ALJ.  *See Garner*, 745 F.2d 383, 387 (6th Cir. 1984) (A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility.").

Plaintiff also contends that the ALJ should have concluded that Claimant's impairments met Listing 112.08 because the evidence shows that Claimant exhibits both "pathological aggressiveness and intense and unstable interpersonal and impulsive and exploitative behavior."

23

Doc. 12, pp. 12-13. However, the Plaintiff does not identify the evidence to support her claim and the ALJ provided a detailed analysis of the evidence, which included evidence of Claimant's aggressiveness and behavioral issues, but concluded that the criteria under Listing 112.08 were not met. Tr. 21-22, 23-26. Moreover, as discussed above, Plaintiff has failed to demonstrate at least two of the B2 criteria of section 112.02.

Plaintiff also argues that the ALJ's reliance on evidence from Claimant's mother (Exhibit 5E, Tr. 133-138) and statements and office notes from Claimant's doctors (Exhibit 2F, Tr. 190-208) to support his statement that Claimant could play team sports and could interact with others and listen to instructions with his coach was misplaced because those records do not support a finding that Claimant was involved in organized sports. Doc. 12, p. 13. However, the ALJ did not specifically conclude that Claimant was involved in organized sports. Moreover, the evidence relied upon by the ALJ shows that, while Claimant had limitations in social function, Claimant could interact with peers and play team sports, whether on an organized team or otherwise. For example, in response to a question asking Plaintiff to describe Claimant's friends and playmates (ages, activities and how often and how long they play together), Plaintiff indicated that Claimant played football and basketball with his friends, adding that they do not play too long "if they are misbehaving themself." Tr. 135; *see also* Tr. 137. Additionally, during the hearing, Claimant testified that he played basketball after school and had last played the day before the hearing. Tr. 42-43. He also testified that he was on the basketball team at school.[13] Tr. 45.

Plaintiff also argues that the ALJ's finding with respect to Listing 112.08 is contradicted by evidence showing that Claimant had problems following directions. Doc. 12, p. 13 (citing Tr. 206 as Ms. Rankin's Vanderbilt Assessment indicating that Claimant's ability to follow directions

---

[13] During her testimony, Plaintiff clarified that she had only recently signed Claimant up for the basketball team and whether he continued to play would be dependent upon his behavior and grades. Tr. 52.

was problematic). However, Tr. 206 is not Ms. Rankin's Vanderbilt Assessment. Rather, Tr. 206 is a portion of the Vanderbilt assessment completed by Ms. Martin, one of Claimant's counselors. While Ms. Martin indicated that Claimant's ability to follow directions was problematic, she reported that Claimant never failed to follow through on instructions or finish schoolwork. Tr. 205-206. On her Vanderbilt Assessment, Ms. Rankin indicated that Claimant very often did not follow through on instructions and fails to finish schoolwork but also indicated that Claimant only occasionally did not seem to listen when spoken to directly and she rated Claimant's ability to follow directions as average. Tr. 201-202.

It is the ALJ's responsibility to weigh the evidence and in doing so the ALJ concluded that Claimant's impairments did not satisfy the criteria of Listing 112.11 or Listing 112.08. Plaintiff has failed to demonstrate that the ALJ's determination that Claimant's impairments did not satisfy Listing 112.11 or Listing 112.08 is not supported by substantial evidence. The ALJ gave significant weight to the opinions of the state agency reviewing psychologists. Tr. 26. Those psychologists opined that Claimant's impairments were severe but did not meet Listing 112.11 or Listing 112.08. Tr. 60 (Dr. Johnston's opinion); Tr. 69 (Dr. Voyten's opinion). Thus, in addition to other evidence of record, the ALJ's determination that Claimant's impairments did not meet Listing 112.11 or Listing 112.08 is supported by the medical opinion evidence.

Further, while Plaintiff claims that the ALJ cherry-picked evidence (Doc. 12, p. 14), the Sixth Circuit has noted that the so-called cherry picking of evidence by the ALJ "can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir.2009). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Id.* at 773

(citations omitted).    Also, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons*, 114 Fed. Appx. at 733.

Based on the foregoing, Plaintiff has not shown that ALJ failed to consider the relevant evidence or that the ALJ's Step Three determination is not supported by substantial evidence.

**B.        The ALJ did not err in not calling a medical expert**

Plaintiff contends that, because Claimant's diagnosis changed from Disruptive Behavior Disorder to Oppositional Defiant Disorder, the ALJ should have called a medical expert and that the failure to call a medical expert denied Claimant a full and fair examination.  Doc. 12, p. 15.

However, as acknowledged by Plaintiff, the use of a medical expert is entirely discretionary.  Doc. 12, p. 14; *see also Davis v. Chater*, 1996 WL 732298, * 2 (6th Cir. 1996) (an ALJ is not required to call a medical expert). (citing 20 C.F.R §§ 404.1527(f)(2), 416.927(f)(2)). Further, where the record contains sufficient evidence for an ALJ to decide a disability claim absent expert medical testimony, a failure to solicit expert medical testimony will not serve as a basis to reverse an ALJ's decision.  *See Williams v. Callahan*, 1998 WL 344073, *4 n. 3 (6th Cir. 1998) (finding that because the record contained the claimant's extensive medical history, the ALJ did not err in not soliciting expert medical testimony).

In this case, the ALJ had before him an extensive medical and non-medical record and his decision reflects the fact that full consideration was given to that record, including the various medical opinions.  Further, as discussed above, as early as January 2012, Claimant's physician noted the presence of symptoms consistent with Oppositional Defiant Disorder and conduct disorder.  Tr. 182.  Moreover, when reviewing the file, the state agency reviewing psychologists identified and considered these January 2012 records and concluded that Oppositional Defiant Disorder was a severe impairment (Tr. 59, 60, 69).

26

In light of the foregoing, Plaintiff has failed to demonstrate that evidence regarding Oppositional Defiant Disorder was not considered or that there was insufficient evidence in the record such that the ALJ's failure to call a medical expert amounted to reversible error.

**C.      The ALJ's reliance on evidence supplied by Claimant's fifth grade teacher and the medical opinions of the state agency reviewing psychologists was proper**

Plaintiff argues that the ALJ's reliance upon the opinions of the state agency reviewing psychologists and Claimant's fifth grade teacher was misplaced and cannot serve as substantial evidence to support the ALJ's decision because the opinions were not based on review or consideration of the entire record.  Doc. 12, pp. 16-17.

It is the ALJ's responsibility to evaluate the opinion evidence using the factors set forth in 20 C.F.R. § 416.927.[14]  20 C.F.R. § 416.927(e)(2).  Federal regulations establish the hierarchy of medical opinion evidence.  At the top of the hierarchy are opinions provided by the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2).  An opinion from a treating source is entitled to controlling weight so long as the opinion is well supported by acceptable medical evidence and not inconsistent with the other substantial evidence of record.  *Wilson*, 378 F.3d at 544.  Next in the hierarchy are opinions issued by examining physicians.  20 C.F.R. § 416.927(c).  Finally, the adjudicator must consider the findings of non-examining physicians.  20 C.F.R. § 416.927(e). Opinions from non-examining physicians are not entitled to any special degree of deference.  *Id.*  However, the regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, as these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i).

---

[14] Those factors include the examining and/or treatment relationship, length, nature and extent of treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization. 20 C.F.R. § 416.927(c)(1)-(6).

This is not a situation where the ALJ provided greater weight to state agency reviewing physicians over the opinions of a treating source.  Further, Plaintiff provides no legal authority for the proposition that, because reviewing psychologists did not review records that post-date their opinions, the ALJ was precluded from considering and providing weight to those opinions.  In fact, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1002 (6th Cir. 2011) (discussing SSR 96-6p, 1996 WL 374180, at *2 (1996)). "The opinions need only be 'supported by evidence in the case record,'" *Helm*, 405 Fed. Appx. at 1002, and  Plaintiff has failed to articulate how the opinions of the state agency reviewing psychologists are not supported by the medical evidence.  Further, as discussed above, the state agency reviewing psychologists considered evidence of Oppositional Defiant Disorder and concluded that Oppositional Defiant Disorder was one of Claimant's severe impairments.  Tr. 59, 60, 69.   The ALJ also concluded that Oppositional Defiant Disorder was a severe impairment. Tr. 21.

In light of the foregoing, Plaintiff's claims that the state agency reviewing psychologists' opinions could not serve as substantial evidence in support of the ALJ's decision because the psychologists did not review all the evidence or did not consider evidence of Oppositional Defiant Disorder are without merit.

Plaintiff's challenge to the ALJ's reliance upon Ms. Rankin's opinion because she offered the opinion without the benefit of reviewing evidence that post-dated her opinion is also without merit.  Having known Claimant for one year as Claimant's fifth grade teacher, she offered her opinion based on her personal observations of his behavior. Tr. 119.  She taught Claimant five days per week for six hours per day.   Tr. 111.  The suggestion that the ALJ was somehow precluded from considering and providing weight to her opinion is wholly without merit.  *See* 20

C.F.R. § 924a(a) (all relevant information in a claimant's file is considered, which would include information from teachers).

Further, Plaintiff has failed to demonstrate that the ALJ failed to consider evidence post-dating Ms. Rankin's opinion.  For example, the ALJ clearly considered later evidence reflecting that Claimant attended counseling for Oppositional Defiant Disorder.  Tr. 25 ("In 2012, the claimant's counselor indicated that the claimant was receiving treatment for ADHD and disruptive behavior disorder . . . Then in 2013, the claimant attended counseling for ODD.").

Based on the foregoing, Plaintiff has failed to demonstrate that the ALJ was precluded from relying upon the detailed opinion offered by Ms. Rankin, a teacher who knew and observed Claimant for a one year period.  Further, although Ms. Rankin did not review or consider evidence that post-dated her opinion, Plaintiff has failed to demonstrate that the ALJ did not consider such evidence when reaching his decision.

## VII. Recommendation

For the foregoing reasons, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

March 11, 2016

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).